IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMPUTER SUPPORT, INC., | : | |
| | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION NO. 1:CV-08-608 |
| v. | : | |
| | : | (Chief Judge Kane) |
| BOOKER TRANSPORTATION SERVICES, INC., | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

Pending before the Court is Defendant Booker Transportation Services, Inc.'s motion for summary judgment on all of Plaintiff's claims. The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the motion will be granted in part and denied in part.

I.  FACTUAL BACKGROUND

Computer Support, Inc. ("Computer Support"), sells software that allows transportation companies to run their day-to-day operations, and maintains its sole place of business in Mechanicsburg, Pennsylvania. Booker Transportation Services, Inc., ("Booker"), is a trucking company located in Texas. In 1997, Booker entered into a contract with Computer Support and purchased software that enabled Booker to manage its operations, including dispatching and coordinating the transportation of cargo. The software also allowed Booker to manage a range of its other business matters, including payroll, accounts receivable, personnel, accounting, maintenance, fuel, mileage, and other records relevant to its operations. Computer Support provided technical assistance and other support to Booker with respect to the trucking company's use of the software. The 1997 contract required the parties to bring any actions arising out of the contract within two years of the date the cause of action arose. (Doc. No. 16, Ex. O. ¶ 1.23.)

Computer Support and Booker worked closely together to address issues that arose from the software. (Statement of Facts, ¶ 8.) In this regard, Computer Support had its own username that it used in order to access Booker's software and database. (Id. ¶ 9.) Upon accessing Booker's software and database, Computer Support could view the number of users accessing the software. (Id. ¶ 10.) Computer Support provided assistance to Booker on approximately a weekly basis. (Id. ¶ 11.)

In 2002, prior to a software upgrade, Booker provided Computer Support with a copy of its database, which included the usernames set up to access the software. (Id. ¶ 12.) By 2002, the number of usernames set up to access the software had grown to 28. (Id. ¶ 13.) Additionally, by 2005, Booker's president and co-owner, Dennis Cowley, had segmented Booker's operations into several additional companies that performed activities that Booker previously performed. (Id. ¶ 14.) The additional companies include Booker Transportation Brokerage LLC, Sallee, Inc., Dodge City Express, LLC, Dedicated Express, Container Services, and Combs Refrigeration LLC (collectively, the "Additional Companies"). (Id. at ¶ 15.) The Additional Companies constitute separate legal entities, in which Booker holds no ownership interest and over which Booker exercises no legal control. (Plaintiff's Counterstatement of Facts, ¶ 15.)

Computer Support had customer service representatives who were responsible for communicating with and assisting Computer Support's customers, including Booker. (Def. Statement of Material Facts, ¶ 16.) Conrad Kadel, a Computer Support customer service representative assigned to Booker, knew that each of the Additional Companies had been added

to the software and he assisted each of the additional companies prior to March 12, 2006.[1] (Id. ¶ 17.) Mr. Kadel attested that on more than one occasion he was informed that a new company had been created and added to the software. (Id. ¶ 18.) In addition, Lisa Dingman, a part-owner of Computer Support who served as its account representative manager through 2006 was also aware that Booker had set up multiple companies in the software, and she personally saw multiple companies when she accessed Booker's software.[2] (Id. ¶ 19, 20.)

In addition, Computer Support's invoices and time records specifically refer to the Additional Companies prior to March 12, 2006, although Computer Support contends that this fact does not "automatically signify" that a separate legal entity was accessing Computer Support's software.[3] (Id. ¶ 21; Plaintiff's Counterstatement of Facts, ¶ 21.) Computer Support's employees maintained time records of the activities they performed, and these time records refer

---

[1] Although Computer Support admits that Mr. Kadel submitted an affidavit attesting to this fact, the company denies that information regarding any of the Additional Companies was brought to Fred Nichols's attention prior to 2007. Accordingly, the Court finds that Mr. Kadel's knowledge about the Additional Companies is not in dispute.

[2] Computer Support admits that Ms. Dingman testified that she knew about the Additional Companies, but denies that the information regarding any of these companies was provided to Fred Nichols prior to 2007. Accordingly, the fact that Ms. Dingman knew about the Additional Companies is not in dispute.

[3] Computer Support purports to deny this fact on the basis that "[t]he invoices and time records are written documents that speak for themselves." (Plaintiff's Counterstatement of Facts, ¶ 21.) It is not clear what about this asserted fact Computer Support denies, and the Court does not find that the fact is properly denied under Local Rule 56.1. Furthermore, Computer Support's additional narrative that follows its purported denial of this fact concerns matters that are, at most, ancillary to the asserted fact. For example, Computer Support supplements its response by explaining how the invoices and time records are completed, and by which category of employee, who Computer Support contends have limited responsibility and no responsibility "for questioning a customer's contractual relationships with [Computer Support], nor are they aware of the terms of such contracts." (Id.)

to the Additional Companies on a number of occasions prior to March 12, 2006, though Computer Support contends that this fact does not signify that the company was cognizant that the Additional Companies were actually separate legal entities accessing Computer Support's software. (Defendant's Statement of Facts ¶¶ 22, 23; Plaintiff's Counterstatement of Facts ¶¶ 22, 23.) In a number of instances, one or more of the Additional Companies is referred to by name on internal Computer Support documents (Defendant's Statement of Facts ¶¶ 24-29; Plaintiff's Counterstatement of Facts ¶¶ 24-29), and the notations occasionally identified specific concerns that one or more of the Additional Companies were having with respect to income statements or tax deductions (Defendant's Statement of Facts ¶¶ 27, 28; Plaintiff's Counterstatement of Facts ¶¶ 27, 28).

Also prior to March 12, 2006, Computer Support issued invoices to Booker that reference several of the Additional Companies.[4] (Defendant's Statement of Facts ¶ 31.) It is undisputed that Computer Support's customer service representatives are responsible for completing the description fields on Computer Support's invoices, and its president, Fred Nichols, checks the control totals (i.e., amounts) on the invoices before sending them to Computer Support's customers. (Defendant's Statement of Facts ¶ 30; Plaintiff's Counterstatement of Facts ¶ 30.) Computer Support double-checked the invoices for accuracy and in none of the invoices did Computer Support seek to charge any additional amount for the Additional Companies or for

---

[4] As with many of the facts that Booker asserts are undisputed, Computer Support purports to deny this asserted fact on the sole basis that "[t]hese invoices are written documents that speak for themselves." (Plaintiff's Counterstatement of Facts ¶ 31.) The Court does not find that Computer Support has properly or adequately disputed the fact that the invoices do contain references to several of the Additional Companies.

work performed for them.[5]  (Defendant's Statement of Facts ¶ 32.)

As consideration for providing Booker with assistance with the software, Computer Support charged Booker an annual fee of $7,000 ever year for ten years.  (Defendant's Statement of Facts ¶ 33; Plaintiff's Counterstatement of Facts ¶ 33.)  The invoices charging this annual fee did not refer to "users" or otherwise indicate that the annual support payment was based on the number of users.  (Id. at ¶ 34.)  According to Plaintiff, Computer Support invoiced Booker for "an amount that was related to the contract, but it was an incorrect dollar value."  (Plaintiff's Counterstatement of Facts ¶ 34.)  At no time during the companies' ten-year relationship did Computer Support ever ask Booker how many users were accessing the software.  (Defendant's Statement of Facts ¶ 35; Plaintiff's Counterstatement of Facts ¶ 35.)  By accessing Booker's software, Computer Support would have been able to determine the number of users who accessed the software.  (Defendant's Statement of Facts ¶ 36; Plaintiff's Counterstatement of Facts ¶ 36.)  Computer Support's customer service representatives accessed information identifying the number of users in Booker's software throughout the time of Lisa Dingman's employment with Computer Support.  (Defendant's Statement of Facts ¶ 37; Plaintiff's Counterstatement of Facts ¶ 37.)  At no point during the companies' ten-year relationship did Computer Support invoice Booker for annual support in an amount actually listed in the 1997 contract, (Defendant's Statement of Facts ¶ 38), and at no point did Booker bring to Computer

---

[5] Booker has supported this fact with citation to deposition testimony from Computer Support's president, Fred Nichols, and to the invoices themselves.  Nevertheless, Computer Support attempts to deny this fact simply because the invoices are written documents.  As before, the Court does not find this fact to be properly disputed.  Moreover, the asserted fact does not pertain to the physical invoices themselves, but rather to the fact that Computer Support's employees double-checked the invoices for accuracy and the company never sought to charge additional amounts for the Additional Companies or work performed for them.

Support's attention the fact that it was being billed $1,000 more than the original support fee set forth in the contract (Plaintiff's Counterstatement of Facts ¶ 38).

In November 2007, following a software upgrade, Booker contacted Computer Support regarding problems that several users were encountering when trying to access the software. (Defendants' Statement of Facts ¶ 39; Plaintiff's Counterstatement of Facts ¶ 39.) In connection with responding to this inquiry, Fred Nichols informed Booker that there would be an increase in the annual fee for support under the contract based upon the number of users.[6] (Defendant's Statement of Facts ¶ 40; Doc. No. 15, Ex. M, email from Fred Nichols dated Nov. 8, 2007). In this same correspondence, Mr. Nichols informed Booker that there would be "no additional charges for the 5 companies on system."[7] (Id. ¶ 41.) Also in this email, Mr. Nichols advised Booker that, because the contract was silent on the issue, it did not allow for Computer Support to charge Booker for the Additional Companies that used the software.[8] (Id. ¶ 42.)

Approximately two months later, on January 3, 2008, Booker informed Computer Support that it was discontinuing its participation in the annual support program for the software and was switching to a new software vendor. (Id. ¶ 43.) In response, in a letter dated January 9, 2008, Computer Support asserted that it should have billed Booker more during their ten-year

---

[6] Computer Support purports to deny this fact, not on the basis that it is, in fact, false, but because Computer Support believes the email constitutes an effort to settle a disputed claim and is thus inadmissible as evidence pursuant to Federal Rule of Evidence 408. For the reasons set forth in the Court's prior order (Doc. No. __), the Court finds that the correspondence is not inadmissible and will be considered. There being no other basis for Computer Support's denial of this fact, the Court accepts it as true.

[7] This fact is deemed admitted for the reason set forth in footnote 6, supra.

[8] This fact is deemed admitted for the reason set forth in footnote 6, supra.

relationship for the Additional Companies and the number of users that utilized the software, and sent Booker an invoice for $444,505. (Id. ¶ 44.)

## II. STANDARD OF REVIEW

Booker has moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.

7

Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

### III.    DISCUSSION

#### A.    Contractual Limitations Period

Booker devotes the majority of its argument toward urging the Court to find that the two-year contractual limitations period governing actions under the software contract should operate to bar Computer Support's claims in this case. Upon careful consideration, the Court disagrees, although the issue is close.

The 1997 contract contains a limitations period that provides as follows:

> No action, regardless of form, arising out of this Agreement may be brought by either party more than two years after the cause of action has arisen, or, in the area of non-payment, more than two years from the date of the last payment.

(Doc. No. 15, Ex. O, 1997 Contract.) Neither this provision nor any other in the contract defines when an action has arisen or, for that matter, contain language precluding application of the discovery period in determining whether an action has been timely filed.

In essence, Booker contends that because Computer Support has acknowledged that certain of its employees knew of Booker's inclusion of more than 10 users to access its software

8

more than two years before the company filed suit that the action seeking to recover amounts attributed to the additional users should be barred.  Booker further argues that the Computer Support employees who knew of the Additional Companies and the number of users were the same employees whom Computer Support assigned to work directly with Booker and who were assigned to prepare and review Booker's invoices, and hence any claim based upon the Additional Companies' use of the software should also be barred.  In addition, Booker maintains that, notwithstanding Computer Support's tacit suggestion otherwise, the so-called "discovery rule" applicable to statutes of limitation has no application to the contractual limitations period at issue in this case and, even if it did, the undisputed evidence of record demonstrates that Computer Support knew or should have known about its alleged injuries more than two years before it brought this action.

The Court finds that the discovery rule's application to the limitations period imposed by the contract is not entirely clear.  However, the Court finds Booker's legal support for the proposition that the discovery rule is never applicable to contractual limitations periods is too limited and insufficient to control the disposition of this action.  Booker essentially relies on a single, unpublished decision from the Eastern District of Pennsylvania that held the discovery rule did not extend to a contractual limitation provision in a surety agreement, and noting that the court had not identified any cases in Pennsylvania holding that the discovery period could apply to contractual limitations periods.  Review of that decision, <u>La Liberte, LLC v. Keating Bldg. Corp.</u>, No. 07-1297, 2007 U.S. Dist. LEXIS 90878 (E.D. Pa. Dec. 11, 2007), reveals it to be inapposite to the facts of this case, as the limitations provision at issue was more obviously limited to a date certain, and this fact guided the court's decision.  Another court in the Eastern

9

District seems to have concluded otherwise, suggesting that the discovery rule may apply to contractual limitations periods and that "[c]ourts are free to apply the discovery rule only if the statute of limitations (or contractual language) in question does not expressly or impliedly prohibit it." Toledo v. State Farm Fire & Cas. Co., 810 F. Supp. 156, 159 (E.D. Pa. 1992). The closest thing to a rule that these cases suggest is that the discovery rule should not apply when the limitations period expressly precludes it or when the date by which an action must be brought is capable of obvious calculation. Upon consideration, Booker has not persuaded the Court that the limitations period in the contract established a clear date by which actions must be commenced, or that it otherwise prohibited application of the discovery rule in determining whether an action has been brought timely under the contract.[9]

Having found that the discovery rule may apply to the limitations period in this case, the Court turns to Booker's alternative argument that notwithstanding the discovery rule, Computer Support's employees assigned to work with Booker and to prepare invoices for Booker knew that the number of users exceeded the amount for which Booker was being billed under the contract and further knew about the Additional Companies that were accessing the software more than two years before suit was filed. Booker urges the Court to impute these employees' knowledge to Computer Support itself and therefore to find that Computer Support knew, or should have

---

[9] The Court is mindful of decisions under Pennsylvania law holding that the discovery rule is inapplicable to limitations periods where limitations period is clearly established by an event or specific time. See, e.g., General State Authority v. Planet Ins. Co., 346 A.2d 265, 267 (Pa. 1975) (affirming judgment granted to insurance company where suit was not brought within one year from the "inception of the loss"). In this case, however, the limitations period is more general. As noted, it does not define when an action has arisen or, for that matter, contain language precluding application of the discovery period in determining whether an action has been timely filed.

known, about its claims as far back as 2002. Although a fact finder could determine that the knowledge of its employees should properly be imputed to Computer Support, the Court ultimately concludes that this remains an issue of fact that Computer Support has adequately placed in dispute.

In a situation where the discovery rule is found to apply, the "point at which the injured party should reasonably be aware that he or she has suffered an injury is generally an issue of fact to be determined by the jury." Sadtler v. Jackson-Cross Co., 587 A.2d 727, 732 (Pa. Super. 1991); Cochran v. GAF Corp., 666 A.2d 245, 248 (Pa. 1995). "Only where the facts are so clear that reasonable minds cannot differ may the commencement of the limitations period be determined as a matter of law." Baumgart v. Keene Bldg. Prods. Corp., 666 A.2d 238, 244 (Pa. 1995).

Booker's argument regarding the contractual limitations period is really an argument about agency principles, as Booker contends that because certain Computer Support employees knew about the number of users and the Additional Companies using the software, this knowledge should be imputed to the company. Booker argues that because the employees with knowledge of these users and the Additional Companies were specifically assigned to work with Booker, Computer Support cannot legitimately claim that the company lacked knowledge of the number of users and Additional Companies. For its part, Computer Support has offered testimony from its president that the employees assigned to work with Booker were charged only with providing technical support to Booker and that knowledge of the terms of the contract between Booker and Computer Support was outside the scope of the employees' duties as Computer Support's agents.

In a recent decision, the Third Circuit provided the following overview of traditional agency principles with respect to the imputation of knowledge to the principal:

> Where an agent receives notice, that notice is imputed to the principal. Am. Sur. Co. v. Pauly, 170 U.S. 133, 153, 18 S. Ct. 552, 42 L. Ed. 977 (1898) ("It is the rule that the knowledge of the agent is the knowledge of his principal, and notice to the agent of the existence of material facts is notice thereof to the principal, who is taken to know everything about a transaction which his agent in it knows."). See also Martin Marietta Corp. v. Gould, Inc., 70 F.3d 768, 773 n.4 (4th Cir. 1995) (stating that "the knowledge imputed to the principal is considered actual knowledge, not constructive") (emphasis added); Higgins v. Shenango Pottery Co., 256 F.2d 504, 509 (3d Cir. 1958) (noting that "it is a rule of agency that the knowledge of the agent is imputed to the principal in connection with any transaction conducted by the agent in behalf of his principal"); Tonelli v. United States, 60 F.3d 492, 495 (8th Cir. 1995) ("As a general rule, notice to an agent is effective if the agent has a duty to receive that knowledge and report it to the principal.") (citation omitted); Veal v. Geraci, 23 F.3d 722, 725 (2d Cir. 1994) ("In general, when an agent is employed to represent a principal with respect to a given matter and acquires knowledge material to that representation, for purposes of assessing the principal's rights and liabilities vis-a-vis a third person the agent's knowledge is imputed to the principal.") (citations omitted); N. Assur. Co. of Am. v. Summers, 17 F.3d 956, 964 (7th Cir. 1994) (stating that "knowledge of an agent is ordinarily to be imputed to the principal," but not when a third party acts with the agent contrary to the interests of the principal) (citation omitted).

Buchanan v. Reliance Ins. Co. (In re Color Tile, Inc.), 475 F.3d 508, 513 (3d Cir. Del. 2007) Pennsylvania law is in accord with these traditional agency principles. "It is well settled in the law of this jurisdiction that knowledge of an agent, acting within the scope of his authority, real or apparent, may be imputed to the principal, and therefore, knowledge of the agent is knowledge of the principal." Workmen's Compensation Appeal Bd. v. The Evening Bulletin, 445 A.2d 1190, 1192 (1982) (citations omitted); see also Indovina v. Metro. Life Ins. Co., 5 A.2d 556, 558

(1939) ("'The general rule which imputes an agent's knowledge to the principal is well established. The underlying reason for it is that an innocent third party may properly presume the agent will perform his duty and report all facts which affect the principal's interest.'" (quoting Mutual Life Ins. Co. v. Hilton-Green, 241 U.S. 613, 622 (1916))).

Where the scope of an employee's authority is not set forth in a written instrument and is a disputed issue of fact, the extent of the authority is generally an issue of fact committed to the jury. See Waldron v. Aetna Casualty & Surety Co., 141 F.2d 230, 234 (3d Cir. 1944) ("The fact of agency and the scope of the power of an agent are questions for the court, where the authority is created by an instrument in writing; but where such authority is to be implied from the conduct of the parties, or where the agency is to be established by witnesses, the fact and scope of the agency are for the jury."); see also Woolfolk v. Duncan, 872 F. Supp. 1381, 1392 (E.D. Pa. 1995) (scope of agent's authority is generally a question for fact finder).

In this case, Booker has produced a substantial quantity of evidence showing that Computer Support employees knew about the number of users and the Additional Companies, and has produced evidence in support of its position that these employees were the employees with whom it interfaced and who had responsibility for all aspects of assisting Booker with the software. Booker thus contends that the knowledge of Computer Support's employees must be imputed to the company, as they were the employees charged with working with Booker on all matters pertaining to the contract.

In contrast, Computer Support has identified evidence in the record sufficient to create a material fact about the scope and extent of these employees' duties, principally the testimony of its president, who denied that these employees had any responsibility to question Booker about

13

the number of users or that the employees knew enough about the terms of the contract and billing arrangements to realize that Booker was either in violation of the contract or was being undercharged. Furthermore, with respect to the Additional Companies, Computer Support has produced evidence to suggest that Booker's identification of the Additional Companies in the software was insufficient to place Computer Support on notice that the Additional Companies were independent entities that had no right to use the software, in part because all service inquiries made on behalf of these companies were channeled through a Booker representative. Accordingly, Computer Support argues that a jury could find that Booker's own actions effectively prevented Computer Support from discovering the real nature of the Additional Companies and the large number of users accessing the software.

Upon review of the competing evidence that the parties have submitted in support of and opposition to Booker's motion for summary judgment, the Court finds that there remain genuine issues of disputed fact on the related questions regarding the scope of authority conferred upon Computer Support's customer service representatives and other employees, and whether Computer Support knew or should have known about its claims more than two years before filing this action. These issues should properly be resolved by the jury at trial.

### B. Equitable Estoppel

In addition to its arguments regarding the contractual limitations provision, Booker contends that Computer Support should be equitably estopped from charging Booker additional amounts on account of the additional users or the Additional Companies because it provided services to these users and companies for a decade and never sought payment for the services during this time. Computer Support responds that, for many of the reasons discussed above, it

was unaware of the circumstances giving rise to its claims in this lawsuit and thus it should not be estopped from seeking payment for the additional users or the Additional Companies. As with the contractual limitations period, the Court finds that the instant dispute cannot be disposed of on the grounds of equitable estoppel because there remain genuine material facts in dispute regarding what, in fact, Computer Support knew or should have known regarding the existence of the number of users and the Additional Companies accessing the software. Summary judgment on this ground will therefore be denied.

  C. **Claims for Promissory Estoppel and Unjust Enrichment**

Booker argues that Computer Support's equitable claims based on theories of promissory estoppel and unjust enrichment should be dismissed because these claims are unavailable in the face of an undisputed contract between the parties. Computer Support asserts that its quasi-contractual claims should be allowed to go forward in the event the contract between the parties is found to be invalid or unenforceable. In reply, Booker emphasizes that the binding nature of the parties' contract is not contested and notes that its defenses in this case are all predicated upon the terms of the 1997 contract. Accordingly, Booker urges the Court to dismiss the equitable claims.

The Court agrees that the equitable claims must be dismissed in this case. Claims for recovery founded upon theories of unjust enrichment and promissory estoppel are inapplicable where a contract exists. See Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1255 (Pa. 2006); see also Carlson v. Arnot-Ogden Memorial Hosp., 918 F.2d 411, 416 (3d Cir.1990) (regarding promissory estoppel); Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir.1987) (regarding unjust enrichment). The 1997 contract between the parties is not in dispute

15

in this case; the only real disputes concern the effect of the contract's terms on Computer Support's claims, Computer Support's knowledge of its claims under the contract, and the parties' course of dealing for ten years under the contract. Because there is no dispute regarding the contract itself, the Court finds that Computer Support's claims for unjust enrichment and promissory estoppel must be dismissed.

        D.        The "Gist of the Action" Doctrine

Booker next requests that the Court dismiss Computer Support's claims for tortious interference with prospective contractual relations (count 5) and for both intentional and negligent misrepresentation (counts 6 and 7) because they are precluded by Pennsylvania's "gist of the action" doctrine. Computer Support acknowledges that Pennsylvania follows the gist of the action doctrine, but argues it does not apply to bar its claims in this case. The Court agrees with Booker that these claims fail under the gist of the action doctrine because they are predicated entirely upon alleged contractual duties, and also because they are unsupported.

Pennsylvania law precludes a plaintiff from bringing a negligence claim where the complained-of injury arises out of defendant's failure to fulfill its contractual obligations unless "the [tort] wrong ascribed to the defendant [is] the gist of the action with the contract being collateral." Phico Ins. Co. v. Presbyterian Med. Servs. Corp., 663 A.2d 753, 757 (Pa. Super. 1995). See also Pittsburgh Constr. Co. v. Griffith, 834 A.2d 572, 581 (Pa. Super. 2003) ("a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts."); Etoll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. 2002) ("the [gist of the action] doctrine is designed to maintain the conceptual distinction between breach of contract claims and

16

tort claims[]" and "[a]s a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims.").

The Superior Court has explained that the gist of the action doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract. Hart v. Arnold, 884 A.2d 316, 340 (Pa. Super. Ct. 2005) (citations omitted).

Booker contends that Computer Support's claims fall squarely within the category of torts that the gist of the action doctrine prohibits because the claims arise directly out of Booker's alleged obligations and performance under the 1997 contract. Thus, with respect to Computer Support's claims for negligent and intentional misrepresentation, Booker notes that they are based on the allegation that Booker was obligated to pay an annual support fee in accordance with a schedule of fees prescribed in the 1997 contract. Booker submits that the only evidence that Computer Support has adduced throughout discovery in this case is that Booker actually paid the annual invoices it received from Computer Support. Booker also notes that the invoices that Computer Support prepared and issued did not contain any reference to the number of users accessing the software. Because Computer Support's claims for misrepresentation relate specifically to Booker's alleged duties under the contract, Booker argues that the claims for misrepresentation are barred.

With respect to the claim for tortious interference, Booker maintains that it likewise arises directly out of the 1997 contract, as Computer Support is alleging that the contract allowed only

17

Booker to access the software and that Booker permitted the Additional Companies to access the software in violation of the contract. Thus, Booker contends that Computer Support's single-license theory flows directly from the 1997 contract itself, and its claims alleging tortious interference are indistinguishable from its claims that Booker breached the contract by allowing the Additional Companies to access the software.

Upon consideration, the Court agrees with Booker that Computer Support's tort claims for misrepresentation and tortious interference are entirely dependent upon the terms of the 1997 contract, and are essentially little more than contract claims masquerading as tort claims. Moreover, review of the evidence submitted confirms that Plaintiff has failed to identify evidence in support of its tort claims other than allegations that Booker is in breach of the 1997 contract. In particular, with respect to the claim for misrepresentation, Computer Support has identified no credible evidence to support it, contending only that Booker paid the amounts set forth in the invoices that Computer Support prepared and alleging that Computer Support relied upon its customers to provide periodic updates regarding the number of software users. The Court finds the misrepresentation claims to be both unsupported and impermissible under the gist of the action doctrine and they will be dismissed, along with Computer Support's claim for tortious interference.

## IV. <u>CONCLUSION</u>

For the reasons set forth above, Booker's motion for summary judgment on Computer Support's claim for breach of contract (Count 1) will be denied. Booker's motion for summary judgment will be granted with respect to the remaining claims, which include: Count 3 (promissory estoppel); Count 4 (unjust enrichment); Count 5 (tortious interference); Count 6

(intentional misrepresentation); and Count 7 (negligent misrepresentation).[10] An order consistent with this memorandum follows.

---

[10] Computer Support previously withdrew its claim for account stated, which had been set forth in Count 2 of the complaint. (Doc. No. 8, at 2 n.1.)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COMPUTER SUPPORT, INC., | : | |
| | : | |
| Plaintiff | : | |
| | : | CIVIL ACTION NO. 1:CV-08-608 |
| v. | : | |
| | : | (Chief Judge Kane) |
| BOOKER TRANSPORTATION SERVICES, INC., | : | |
| | : | |
| Defendant | : | |

## ORDER

AND NOW, this 9th day of September 2009, upon consideration of Booker Transportation Services, Inc.'s motion for summary judgment (Doc. No. 14), and for the reasons set forth in the accompanying memorandum, IT IS HEREBY ORDERED THAT the motion is:

1. DENIED with respect to Count 1 (breach of contract).

2. GRANTED with respect to all remaining claims (Counts 3-7).

3. The Clerk of Court shall withhold entry of judgment on Counts 3-7 pending the conclusion of this action or further order of the Court.

/s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania